Morning to the Honorable Public Court, Counsel David Ramos on behalf of Mr. Jose Casiano-Jimenez, may I please report? Mr. Casiano holds that his trial counsel rendered him ineffective assistance of counsel when he was denied of his right to testify. Before you refer, isn't this a case where your client is no longer in this jurisdiction? That is correct, Your Honor. He extinguished his imprisonment term in December and in February he was already removed to his native country of Colombia. The prison term also has collateral consequences in terms of his ability to come back to the United States should he wish to. That is correct, Your Honor. The right to testify at one's own trial is a fundamental right as well as a personal right that only the accused has the right to waive and make a waive that is intelligent, knowingly, and nothing in the record exists to indicate that Mr. Casiano waived that right to testify. This claim is supported by defense counsel's trial counsel on admission during the evidentiary hearing when he testified before the district court that he does not recall having advised Mr. Casiano as to his right to testify at his own trial. The most that trial counsel understood as to why he did not do that was that he thought that this was the best course during the trial given that he was going to produce an expert witness that would present the defense of lack of knowledge. But still, even where a trial counsel believes that that's the best trial strategy, case law, especially at Jones v. Barnes, a 1985, a 1983 case, that the decision of whether to testify is for the accused to make and not a matter of trial strategy. Counsel, we understand that and it is clear that the evidence in the record all favors your client on that point, the testimony at the evidentiary hearing. So what we're left with is Judge Fuste's statement that even though both your client and his attorney testified consistently to that, Judge Fuste says that, as I read his opinion, that the group meeting somehow substituted for the individual advice. Yes, Your Honor, that is correct. But he says more than that, too. He also says that the issue of not having been advised as to his right to testify on his own behalf is inherently incredible. Do you want to comment on that? Because I'm going to ask the government at some point to tell me what is inherently incredible about that. Yes, Your Honor, the defendant is a Colombian national who was not knowledgeable as to the American legal system, especially in criminal law. And he did not know that he had a right to testify. And even though his trial counsel told him, don't worry about testifying, we have a person who is going to present a good defense for you, a lack of knowledge defense, through a Captain Rivera that was produced during that trial. Have you read the captain's testimony? Excuse me, sir? Have you read the transcript? Yes, Your Honor. Yes, I did read it. And even though he did present a lack of knowledge that the way that… How can he testify as to somebody else's lack of knowledge? That is something that only trial counsel would have known as to why he would produce that kind of a defense, Your Honor. In any event, you'll agree with Judge Sorolla that the captain's testimony isn't the substitute for the petitioner's direct testimony that he lacked knowledge. That is correct, Your Honor. The most important witness for the defense in many criminal cases is the defendant himself. Mr. Cassiano was denied of that opportunity to be his own witness during his trial. If he would have been advised as to that right, he would have sat down, given his version of what had happened, his defense, and who knows if the jury would have decided in a different manner. In this case, seven defendants went to trial, and three of them were found not guilty. Mr. Cassiano was a crew member aboard that ship, and… Well, he was slightly more than a crew member, apparently. That is correct, Your Honor. As a crew member… No, no, no. You didn't hear what I said. Excuse me? He was more than just a crew member. He was apparently the first officer. Well, yes, Your Honor. That is correct. But even that makes his testimony desirable, because as I understand it, he testified at the evidentiary hearing that he didn't sign on as first officer, but that after he had signed on as an ordinary seaman, when the voyage started, he was drafted to serve as first officer. So that's a little bit different than being in the leadership of the crew from the side. That's something, of course, that the captain, the expert witness, couldn't have testified to. And the three defendants who were acquitted were all ordinary seamen. Yes, Your Honor. Had Mr. Cassiano been afforded the right to testify, he would have presented the following accounts, testimony in his favor. That he had went to this ship, the Osiris II, to speak with the captain in charge of the boat to see if they needed help because he needed a job. He wanted to offer his services aboard this ship. And eventually he was hired, and the ship would navigate to bring some goods over to the Dominican Republic to deliver different goods. And he would have stated that he did not have knowledge that there were drugs on board, contrabands on board, which Captain Rivera testified that this contraband was found underneath, hidden in a compartment underneath the deck of the ship. And finally, Mr. Cassiano understood that if he would have been granted his right to testify, the outcome would have been different because the jury would have had the opportunity to hear his testimony, and he would have had the possibility of being with his family. Even though he has already served out his imprisonment term, Your Honors, we submit that he still has that five years of supervised release term to serve out, plus the collateral consequences of this sentence upon him. If there are no more questions, I'll reserve whatever time I have left, a minute and a half. Thank you, sir. Good morning. May it please the Court, my name is Tiffany Monrose and I represent the United States. We ask that you affirm the decision of the District Court for the reasons set forth in our brief. Yeah, well, let's talk about that a little. All right. You say on the one hand in your brief that the testimony of the expert witnesses, you say, and Judge Woostay indicates, was somehow an adequate substitute for the defendant's testimony. As I read the captain's testimony, the captain said it was possible that the people on board didn't know of the existence of the contraband. Is that correct? Yes, Your Honor. How is a statement like that? Not only that, when he tried to say what the defendant had told him, the government properly objected to a deed hearsay. So how could they get that evidence before the Court? Now, the evidence that the... I'm sorry, Ruth. No, no, no. Judge Torreira and I are going at the same point. Testimony by an expert witness that it is possible that a defendant didn't have knowledge, how can the government argue that that is a substitute for the defendant's direct testimony that he did not have knowledge? It seems to me they are two different things and the second is much more probative than the first. And the government recognized in its brief that the... Well, I don't think the government did recognize that in its brief. In our brief we, at the start of the... Whether you recognize it or not. And is there any evidence anywhere in the record that Cassiano was told by his lawyer of his right to testify? Yes, I would like to refer the Court to page 34 of the 2255 hearing transcript. On that page, when asked if he advised his client of his right to testify, the attorney said yes. We explained to them that it was a consensus among the attorneys that it was not advisable for them to take the stand. And that to you is equivalent to advising him that he had a right to testify? Yes, the defendant stated in response to the district court's question on page 7 of the transcript that the subject of him testifying was discussed with his attorney. And that demonstrates that he was advised of his rights. It belies the argument that he was not aware. This court found in Rosenthal v. O'Brien that the strong urging of counsel regarding not testifying does not constitute a violation of a defendant's constitutional rights. But I'm still looking for evidence here that the defendant was advised that he had a right not to testify. Sure, it's true that the attorney and Cassiano both acknowledged that he was told about this consensus, this plan, that they were going to have an expert testify in lieu of individual defendants offering testimony. But that to me is a far different thing than someone saying forthrightly to a criminal defendant, you have a right to testify or not to testify and the decision to do that is your decision. It's not a group decision, it's not your lawyer's decision, it's your decision. I agree with you. In this transcript we see replete instances where Mr. Inserni stated, I did not specifically tell him that. However, this court in United States v. Owens explained in footnote 10 that an attorney is not required to go through any specific routine or a formal waiver process. What is required is that an attorney must have some sort of conversation with his client such that he is informed of his right. That's right. And can make a decision about that right. And what evidence is there of such a conversation in this record? The only conversation as to which we have any details is the conversation that occurred at the group meeting. And that wasn't in any way concerned with the defendant's right to testify or not, that was concerned with strategy and what the consensus of the lawyers was as to strategy. Yes, the defendant along with the other seven defendants was present during the meeting where they were advised that they should not take the witness stand. They weren't told that that decision was theirs. They were advised that the consensus of the attorneys was that it was advisable for them not to testify. That's not telling a defendant it's up to you whether you testify. Right? Absolutely. I agree with the court. He did not explicitly state and Owens suggested that an attorney does not have to specifically state a certain formula of words or expressions as long as there is a conversation. And they had that conversation. But the conversation has to contain the essential elements of the constitutional right. They can have a conversation about what the temperature is likely to be next Friday. I agree. That's some kind of conversation but it doesn't meet the constitutional standard. But then you would almost have to disregard Cassiano's statements to the court that they did discuss the subject of his testimony. Because his statement read in the context of the transcript is clearly a reference to the fact that he was present at the meeting. Because that's what his attorney has said is the only time they discussed it. If you go back to page 7 of the transcript, he was specifically asked was the subject of you testifying discussed with your attorney? And he said yes. He answered in the affirmative. If you disregard that. I'm not saying disregard it. He did discuss it with his attorney at the group meeting with his attorney and all the other defense attorneys. The subject of him testifying. The record also shows that. You're talking about a non-U.S. citizen. An alien with no proficiency in the language. And you want to hold him to some sort of specific formulation of words? No. I mean if someone had said to him what did the attorney tell you? And he had answered he told me I could decide whether or not to testify. Something like that. Then we'd have some kind of conversation. We don't have that evidence. We do have a statement from Mr. Inserni where he acknowledged that he explained the jury trial process to his client. Yes. And he also said that he never explained to his client that he had a right to decide whether to testify or not. He stated that he didn't use those words specifically. He didn't state it specifically like that. So it's enough for an attorney to explain the jury trial process? No. But being a person who is not familiar with the court system, when his attorney acknowledged that he did explain the process, I'm only responding to that aspect of the court's question. I'm not suggesting that that is a replacement for being advised of the right to testify. And you agree that if we find a violation of the right here that prejudice is manifest? Well, if you find that... If we find there was a violation of the right, let's say we find that there is no supportable evidentiary predicate that would allow us to conclude that Cassiano was duly advised of his right to testify or not and told that it was his decision. If we find that, there's a violation of a constitutional right. And presumably there is the first prong of the ineffective assistance of counsel test is met. That leaves the question of prejudice from that violation. And it seems to me that prejudice in this situation, if we get there, is open and shut. Right, if we get there. And we know in this case that the court found that there was sufficient evidence to convict the defendant. But don't you agree that it's not a question of sufficient evidence to convict, it's a question of was there prejudice from the ineffective assistance, if we find ineffective assistance? Yes, the defendant would have to show that there was a probability that it was sufficient. Doesn't prejudice just cry out to you from this record? I would say no. You would say no? I would say no. Three other ordinary seamen were acquitted. The conviction of the defendant without him testifying is upheld by this court on a two to one vote? Yes. And the defendant who could have given first hand knowledge, had he testified? And the record shows that it took the Coast Guard about a week of poking through this boat with engineers and everything possible to find where these drugs were hitting on the keel of this boat. When you have all those things added together, you don't think his testimony to the effect that he didn't know anything about drugs being on the boat, would have his testimony? Not some expert talking about irrelevant things as far as this problem goes. You don't think that's enough to show prejudice? I would say no. Tell me then, what would be enough? What would be enough to show prejudice? Well, I would say in these particular facts, you have a defendant who consulted with the expert to explain to him his involvement on the ship. Was the expert able to testify about what this particular defendant knew? Well, he said... You read the record. Yes. The government, very properly, when he tried to say what the defendant had told him about this, you objected. It would have been hearsay. Yes. And the objection was upheld. So there was no way that this evidence from the defendant could be gotten before the jury. We know in this case that there was additional information that would have been offered about the lack of knowledge. The court found that the location of the drugs, where the drugs were found, were within the cruise quarters. They were not within the cruise quarters. They were below the cruise quarters. Below the cruise quarters. With a steel bolted plate on top of which there was a glued plywood plank on top of which there was vinyl glued there. That's where it was. Yes. And it took the Coast Guard a whole week to find it. It took them several days to locate the contraband. All right. Yes. Thank you, Ms. Munrose. Thank you.